# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 29, 2026

Lyle W. Cayce
Clerk

No. 24-20211
Summary Calendar

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Munson P. Hunter, III,

*Defendant—Appellant*.

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CR-85-1

———————

ON REMAND FROM
THE SUPREME COURT OF THE UNITED STATES

Before Davis, Smith, and Higginson, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

This case comes before us on remand from the Supreme Court. Defendant-Appellant Munson Hunter pled guilty of wire fraud pursuant to a plea agreement that included a waiver of his appeal rights. The district court then sentenced Hunter to a term of supervised release and included a special condition requiring him to participate in a mental health program and take all mental health medication his physician might prescribe. Hunter appealed the

condition that he take recommended medication, and we enforced his appeal waiver. The Supreme Court granted certiorari and announced a new standard limiting appeal waivers: they are ineffective if enforcement would result in a "miscarriage of justice." Applying this standard, we conclude that Hunter effectively waived his right to appeal the challenged condition of supervised release and therefore DISMISS this appeal.

## I.

Hunter was indicted on ten counts of bank and wire fraud stemming from a scheme that resulted in a loss of about half a million dollars to various financial institutions. He thereafter asked the court to "order independent competency and insanity evaluations." The request noted that "Defense counsel's most recent interactions with defendant have raised concerns about his competency" and "these concerns have also been amplified based on recent conversations and information received from Defendant's ex-wife regarding Defendant's behavior."

Although the court granted Hunter's request for an evaluation, no further competency concerns arose. A few months later, Hunter pleaded guilty to one count of aiding and abetting wire fraud in return for the Government's dismissal of the nine other charges. His plea agreement contained an appeal waiver providing that Hunter "knowingly and voluntarily waive[d] the right to appeal" his "conviction and sentence," except to raise ineffective assistance of counsel.

The Probation Office then prepared a Presentence Report. The Report provided that Hunter endured a traumatic childhood: his father murdered his mother and grandmother in front of him when he was nine years old. Thereafter, he lived with his uncle, who was physically abusive. At age 10, Hunter was diagnosed with anxiety and depression. He was then sexually assaulted at 14, which understandably worsened his mental health.

But the Report noted Hunter "refused medication to treat his symptoms." The Probation Office recommended that, as a condition of supervised release, Hunter "participate in a mental-health treatment program and follow the rules and regulations of the program." The proposed condition further included the requirement at the center of this case: that Hunter "take all mental health medications that are prescribed by [his] treating physician" (the "Medication Condition").

The court held a sentencing hearing. There, Hunter described some of the unfortunate details of his childhood and their effect on his mental health. He also blamed his criminal activity in part on the government for mistreating his father during and after his father's military service. Defense counsel similarly explained Hunter had a "very traumatic . . . childhood and upbringing" that "helps give context and explains why he's here."

Hunter objected to the Medication Condition at the sentencing hearing. Although he "want[ed] to take mental health programs," he did not "want to be forced to medicate" because he didn't drink, curse, or use drugs. The court responded:

> Well, if you're going to participate in mental health treatment and the treatment provider prescribes drugs, you should take them. If there's a dispute, you can address it to the probation officer. If the probation officer can't resolve the dispute, you can address it to me.

The court then sentenced Hunter to 51 months' imprisonment and a supervised release term of three years. The court included the Medication Condition as a requirement of supervised release.

Despite the appellate waiver in his plea agreement, Hunter appealed his sentence. He contended the Medication Condition was "not supported

3

by the record" and thus infringed on his "fundamental due process liberty interest in being free of unwanted mental health medication."

We dismissed Hunter's appeal. At the time, this circuit "recognized only two exceptions to the general rule" that appellate waivers are enforceable: "first, ineffective assistance of counsel, and second, a sentence exceeding the statutory maximum."[1] Because Hunter's arguments did not fit within either of these exceptions, we enforced his appellate waiver.

## II.

The Supreme Court granted certiorari in this case and announced a new standard governing appeal waivers. A waiver is now "unenforceable when it would result in a miscarriage of justice—meaning, when it would leave in place the kind of egregious error that would bring the judicial system into disrepute."[2] "The error must be obvious—not one a judge could reasonably make."[3] This test, "properly understood and applied, sets a high bar" although not an "insurmountable one."[4] Overall, "[t]he point of the miscarriage-of-justice limit . . . is to offer a safety valve for extreme cases—a way out of waiver when the system's integrity is at stake."[5]

The Court further explained the types of situations that would qualify for the miscarriage-of-justice exception:

> First, a defendant may appeal a sentence exceeding what the relevant statute allows—most commonly, a term of years above the maximum prescribed. Second, a defendant may appeal a

---

[1] *United States v. Barnes*, 953 F.3d 383, 389 (5th Cir. 2020) (cleaned up).

[2] *Hunter v. United States*, 146 S. Ct. 1702, 1708 (2026).

[3] *Id.* at 1713.

[4] *Id.*

[5] *Id.* at 1713–14.

No. 24-20211

sentence infected with a blatant constitutional error, such as when a judge takes account of a constitutionally impermissible factor (like race) or imposes a constitutionally infirm condition of supervised release (like barring a defendant from becoming pregnant). And third, a defendant may appeal if his sentence was imposed without some minimum of civilized procedure, as in, yes, the [trial by] twelve orangutans case—or less extravagantly, one in which the judge refused to hold a hearing consonant with basic principles of law.[6]

But the Court opined that other, more "uncertain or ordinary" errors would not override an appeal waiver.[7] It observed that "mistakes" in "the detailed calculation of a Sentencing Guidelines range and the mandatory consideration of multiple sentencing factors" are "unfortunate but inevitable."[8] "Such standard-fare errors in misapplying sentencing law cannot cancel an appeal waiver."[9]

After announcing the miscarriage-of-justice standard, the Court declined to apply the test to Hunter's case in the first instance.[10] Instead, it remanded to this court to apply this standard to the record facts of this case.[11] We ordered supplemental briefs addressing the Supreme Court's opinion.

### III.

Hunter contends the district court's imposition of the Medication Condition constituted both (1) "blatant" constitutional error and (2)

---

[6] *Id.* at 1714 (internal quotation marks and citations omitted).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 1715.

[11] *Id.*

"obvious" statutory error. We take each argument in turn, ultimately concluding that the district court committed no "egregious" error that would result in a "miscarriage of justice" or "bring the judicial system into disrepute."[12]

## A. CONSTITUTIONAL ERROR

Hunter argues first that the district court's imposition of the Medication Condition amounts to "blatant constitutional error."[13] He contends that substantive due process principles give rise to a fundamental right to refuse unwanted medication. This right, Hunter argues, means he cannot be forced to take medication unless such compulsion is narrowly tailored to achieve a compelling government interest. And in his view, such tailored findings are absent from this record, which renders the Medication Condition *blatantly* unconstitutional.

But much of Hunter's support for this argument comes from a blend of language from out-of-circuit case law.[14] The only binding precedent he invokes are Supreme Court cases arising from two related but distinguishable contexts.

First, in *Washington v. Harper*, the Court considered whether the government could forcibly medicate an inmate to ensure "prison safety and

---

[12] *Id.* at 1708.

[13] *Id.* at 1714.

[14] For example, he draws on a passing statement from a Sixth Circuit case for the proposition that the right not to take unwanted medication is "fundamental." *See United States v. Grigsby*, 712 F.3d 964, 976 (6th Cir. 2013). And he cites cases from the Sixth, Ninth, and Tenth Circuits establishing constitutional standards for requiring releasees to take medication. *See United States v. Krueger*, 815 F. App'x 847, 855 (6th Cir. 2020); *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019); *United States v. Williams*, 356 F.3d 1045, 1057 (9th Cir. 2004).

security."[15] The Court observed there was "no doubt" that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."[16] However, it explained "the extent of a prisoner's right under the Clause . . . must be defined in the context of the inmate's confinement."[17] Accordingly, the Court held that for an inmate to be forcibly medicated, the regulation must be "reasonably related to legitimate penological interests" considering the "valid, rational connection" between the regulation and the government's interests, the impact on other prison personnel and resources, and the "absence of ready alternatives."[18]

Second, in *Sell v. United States*, the Court considered the circumstances under which the government could medicate a pre-trial detainee to render him competent to stand trial.[19] The Court set out a stricter test for this context, holding that involuntary administration was permissible "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests."[20]

Crucially however, neither the Supreme Court nor this court has addressed the constitutional standard for requiring a defendant to take

---

[15] *Washington v. Harper*, 494 U.S. 210, 223 (1990).

[16] *Id.* at 221–22.

[17] *Id.* at 222.

[18] *Id.* at 223–25.

[19] 539 U.S. 166, 180 (2003).

[20] *Id.* at 179.

medication as a condition of supervised release, which presents unique considerations. First, Hunter has different rights than the groups addressed in *Sell* and *Harper*. Unlike the pretrial detainees in *Sell*, Hunter has been convicted of a crime and is still serving his criminal sentence.[21] Releasees like Hunter therefore "do not enjoy the full panoply of rights guaranteed by our Constitution" despite being released from prison.[22] Second, the government's interests in the supervised release context also differ. Rather than obtaining a conviction (as in *Sell*), or ensuring prison safety (as in *Harper*), the government's goals in imposing supervised release conditions include reducing recidivism, protecting the public from further crimes, and promoting Hunter's health and re-integration into the community.[23]

The paucity of authorities on the challenge Hunter makes in this case is a substantial strike against his assertion that the district court committed "blatant" constitutional error. As a general matter, an error is clear or obvious only if it is apparent under controlling law and does not require an extension of precedent.[24] This makes sense: obvious error is both easier to

---

[21] *See Mont v. United States*, 587 U.S. 514, 524 (2019) ("Supervised release is a form of punishment that Congress prescribes along with a term of imprisonment as part of the same sentence.").

[22] *United States v. Giglio*, 126 F.4th 1039, 1045 (5th Cir. 2025) (holding supervised releasees can be categorically deprived of Second Amendment rights); *see also Samson v. California*, 547 U.S. 843, 850 (2006) (holding that parolees can be subject to suspicionless searches without offending the Fourth Amendment because they "have severely diminished expectations of privacy by virtue of their status alone.").

[23] *See id.*; *United States v. Johnson*, 529 U.S. 53, 59 (2000).

[24] *See United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (observing, in the plain-error context, that "[w]e ordinarily do not find plain error when we have not previously addressed an issue. Even where the argument requires only extending authoritative precedent, the failure of the district court to do so cannot be plain error." (internal citations and quotation marks omitted)); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (holding a state court did not violate "clearly established Federal law," as necessary

identify and more likely to exist where a court has failed to abide by a controlling constitutional standard.

Regardless, we know from *Harper* and *Sell* that a releasee has a "significant liberty interest" in avoiding unwanted medication.[25] But when we balance this interest against the government's interests in protecting the public and promoting Hunter's health and resumption of community life, we have no difficulty in concluding that the district court's imposition of the Medication Condition was not "blatant constitutional error" such as to result in a miscarriage of justice.

First, there is a nexus between the Medication Condition and the government's interests in promoting Hunter's health and reducing his likelihood of re-offending. The Presentence Report explains that Hunter experienced physical abuse, sexual assault, and the tragic murder of his family members, resulting in anxiety and depression. Hunter and his counsel both invoked this background to explain his crimes at his sentencing hearing. And the Medication Condition was imposed as part of a broader requirement that Hunter participate in a mental health treatment program and abide by the rules of that program. Hunter himself advised that he "always wanted to get help" and "want[ed] to take mental health programs." Thus, this is not a situation where the Medication Condition is untethered from the record or from the government's interests.

Second, the district court provided a mechanism for Hunter to further litigate his objections *if* medication is prescribed in the future.[26] It advised

_____

for the petitioner to obtain relief under 28 U.S.C. § 2254, "[b]ecause our cases give no clear answer to the question presented." (internal quotation marks omitted)).

[25] *Harper*, 494 U.S. at 221.

[26] We briefly note that the Government raises ripeness in its brief. Indeed, we held in *United States v. Ellis* that a challenge to a Medication Condition was not ripe for review

that if a "dispute" arose about Hunter's taking particular medication, and "the probation officer can't resolve the dispute," Hunter could "address" his challenge to the court. A "modifiable condition" such as this "works a less significant deprivation of liberty than one which cannot be altered."[27] "[A] defendant faces an uphill battle when he seeks to convince us that a modifiable condition seriously affects the fairness, integrity or public reputation of judicial proceedings."[28] This is especially true here: the Medication Condition can be more effectively considered in light of concrete facts that may occur during Hunter's term of supervised release.

Third, Hunter will only be required to take medication as prescribed by a physician, which militates against unconstitutionality.[29] For example, the *Harper* Court refused to "assume that physicians will prescribe these drugs for reasons unrelated to the medical needs of the patients; indeed, the ethics of the medical profession are to the contrary."[30] Likewise, we refuse to assume that Hunter's physician would prescribe mental health medication against Hunter's medical interest.

---

because it was uncertain that the defendant would be prescribed medication once he began supervised release at the conclusion of his ten-year custodial sentence. 720 F.3d 220, 227 (5th Cir. 2013). However, we will not dismiss the instant appeal on ripeness grounds. The Supreme Court reached the merits of this case, and its mandate charged us with "decid[ing] whether enforcing Hunter's appeal waiver would result in a miscarriage of justice." *Hunter*, 146 S. Ct. at 1715. We therefore interpret the Supreme Court's opinion as precluding a dismissal on justiciability grounds.

[27] *United States v. Fields*, 777 F.3d 799, 806 (5th Cir. 2015).

[28] *United States v. Prieto*, 801 F.3d 547, 554 (5th Cir. 2015) (cleaned up).

[29] *See Harper*, 494 U.S. at 226 ("The drugs may be administered for no purpose other than treatment, and only under the direction of a licensed psychiatrist.").

[30] *Id.* at 222 n.8.

No. 24-20211

Fourth, the prevalence of the Medication Condition suggests its imposition does not rise to the level of "egregious" constitutional error that would "bring the judicial system into disrepute."[31] This exact condition has been "broadly imposed" by federal district courts "as a 'stock' special condition" of supervised release.[32] As of the date of this opinion, the Medication Condition is included in the template for special supervised release conditions posted on the federal courts' publicly accessible website as a resource for courts and probation offices nationwide.[33] More specifically, the district court that sentenced Hunter included the Medication Condition as a proposed special condition in its "General Order" on supervised release conditions.[34] Although pervasiveness does not equate to constitutionality, the widespread imposition of this exact condition is strong evidence that this is not an "extreme case" of the kind the Supreme Court contemplated would vitiate an appeal waiver.

Finally, we observe that the Medication Condition imposed here bears no resemblance to the two examples of "blatantly unconstitutional" practices given by the Supreme Court: considering race in sentencing or prohibiting a supervised releasee from becoming pregnant.[35] Those errors stem from extreme animus or prejudice, which are *never* appropriate

---

[31] *Hunter*, 146 S. Ct. at 1708.

[32] *See United States v. Malone*, 937 F.3d 1325, 1328 (10th Cir. 2019) ("[B]oth parties recognized that [the medication] condition is currently being broadly imposed as a 'stock' special condition.")

[33] *Overview of Probation and Supervised Release Conditions, Chapter 3: Mental Health Treatment (Probation and Supervised Release Condition)*, UNITED STATES COURTS, [https://perma.cc/PX6N-WNDR] (last visited July 24, 2026).

[34] S.D. Tex. Gen. Order No. 2017-10 (Jan 6, 2017).

[35] *Hunter*, 146 S. Ct. at 1715.

No. 24-20211

considerations in sentencing.[36] In contrast, there is no suggestion here that the district court imposed the Medication Condition for such invidious purposes.[37]

For these reasons, we find the district court's imposition of the Medication Condition did not amount to blatant constitutional error giving rise to a miscarriage of justice.

## B. Statutory Error

Hunter next argues that the district court's imposition of the Medication Condition egregiously exceeded the bounds of 18 U.S.C. § 3583(d). That statute requires that supervised release conditions "involve[] no greater deprivation of liberty than is reasonably necessary" to "afford adequate deterrence to criminal conduct"; "protect the public from further crimes of the defendant"; and "provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner."[38]

Hunter's argument is unavailing. The Supreme Court certainly left open the possibility that *some* statutory sentencing errors—"*most commonly* a

---

[36] For the pregnancy-prohibition example, the Supreme Court cited to *People v. Zaring*, 8 Cal. App. 4th 362, 374 (1992). There, the sentencing court reasoned that the probationer should not have any more children because she was on public assistance. *Id.* The appellate court reversed, noting this "imposition of personal social values" was "disturbing" and "inappropriate." *Id.* at 374–75.

[37] Indeed, the Sixth Circuit sets stringent constitutional standards for requiring releasees to take medication. *See Krueger*, 815 F. App'x at 855. But that Court nevertheless refused to overturn a Medication Condition on miscarriage-of-justice review because the condition simply "does not involve the same fundamental unfairness as a sentence that is based on racial discrimination." *United States v. Rush*, No. 23-5533, 2024 WL 5689727, at *2 (6th Cir. Dec. 9, 2024) (unpublished), *cert. denied*, 145 S. Ct. 2787 (2025).

[38] 18 U.S.C. §§ 3583(d), 3553(a)(2)(B), (C), and (D).

term of years above" a numerical statutory maximum—could be "egregious" enough to override an appeal waiver.[39] But it also emphasized that "standard-fare errors in misapplying sentencing law" and in the "mandatory consideration of multiple sentencing factors" are "unfortunate but inevitable" and therefore "cannot cancel an appeal waiver."[40] Hunter's appeal, if anything, presents such a "standard-fare," non-obvious sentencing error because, as discussed above, there is a clear nexus between Hunter's mental health history and the Medication Condition.

Hunter cites two cases in which we found the imposition of mental health supervised release conditions amounted to "obvious" statutory error. But in those cases, there was practically no record support for the conditions. In *United States v. Gordon*, we found a mental health treatment condition constituted plain error where there was a complete "absence of *any* record evidence indicating that [the releasee] has a questionable mental health history or a particular diagnosis requiring mental health treatment."[41] Similarly, in *United States v. Bree*, we reversed the imposition of a medication condition where the defendant had never been "diagnosed with a mental disorder" and the only indication of his mental health struggles was a "suicide attempt 40 years before" his sentencing.[42]

But where there is record support for a condition—even somewhat tenuous record support—we have found no "obvious" § 3583 error. For example, in *United States v. Rocha*, the district court imposed mental health and medication conditions on a defendant who had never been diagnosed

---

[39] *Hunter*, 146 S. Ct. at 1714 (emphasis added).

[40] *Id.* at 1713.

[41] 838 F.3d 597, 604 (5th Cir. 2016) (emphasis added).

[42] 927 F.3d 856, 861 (5th Cir. 2019).

with a mental health disorder. We nevertheless found no plain error because the defendant had a "violent" criminal history and his wife had "expressed concern that he was bipolar due to a history in his family."[43]

Here, there is more record support for the Medication Condition than in *Gordon*, *Bree*, or even *Rocha*. Hunter (1) presently struggles with his mental health, (2) has been diagnosed with mental health conditions, (3) affirmatively requested mental health treatment, and (4) implicated his mental health struggles as a cause of his criminal activity. For these reasons—as well as those identified above in relation to Hunter's constitutional arguments—there was no "obvious" error in the district court's determination that requiring Hunter to take prescribed mental health medication "involve[s] no greater deprivation of liberty than is reasonably necessary" to "protect the public from further crimes" and to provide Hunter with "needed . . . medical care . . . in the most effective manner."[44]

## IV.

For these reasons, we find no miscarriage of justice would result from enforcing Hunter's appeal waiver. Because Hunter effectively waived his right to appeal the imposition of the Medication Condition, we enforce his waiver and DISMISS this appeal.

---

[43] 732 F. App'x 291, 296 (5th Cir. 2018).

[44] 18 U.S.C. § 3583(d).